CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2019 DEC 23 AM 10: 19

DEPUTY CLERK _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| ALEJANDRO GARCIA-IZAZAGA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:19-CV-073-C-BQ |
| | § | CRIMINAL NO. 5:17-CR-100-C-1 |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Movant Alejandro Garcia-Izazaga, a federal prisoner, brings this Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. ECF No. 1. The respondent is the United States of America (Government). On June 26, 2019, the United States District Judge referred the matter to the undersigned magistrate judge for the limited purpose of conducting an evidentiary hearing and filing findings of fact and conclusions of law regarding "Movant's claim for relief based upon allegations that counsel was ineffective by failing to file a notice of appeal." *See* ECF No. 10. The district judge also authorized the magistrate judge to appoint counsel "only for the limited purposes of representing Movant at the evidentiary hearing and, if necessary, filing any objections to the Report and Recommendation." *Id.* at n.1.

### I. Procedural History

On November 8, 2017, the Government obtained an indictment against Garcia-Izazaga alleging multiple counts of Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine and Possession with Intent to Distribute Methamphetamine, as well as a count

1

for Illegal Re-Entry After Deportation. Crim. ECF No. 20.[1]  Before the grand jury returned the indictment, the Court appointed Laurie L. Key as counsel for Garcia-Izazaga (Crim. ECF No. 9) in reference to a Criminal Complaint (Crim. ECF No. 1), and Ms. Key filed her notice of appearance on November 7, 2017 (Crim. ECF No. 12).

Garcia-Izazaga entered into a plea agreement with the Government on December 22, 2017, where he pleaded guilty to Count Five of the indictment, Possession with Intent to Distribute 500 Grams or More of Methamphetamine.  Crim. ECF No. 122.  On April 13, 2018, Senior United States District Judge Sam R. Cummings sentenced Garcia-Izazaga to serve a term of 365 months in prison.  Crim. ECF Nos. 224, 226.  Garcia-Izazaga did not file a direct appeal; however, on April 18, 2019, he filed the instant § 2255 motion.  Crim. ECF No. 270.  Through his motion, Garcia-Izazaga alleges that Ms. Key provided ineffective assistance of counsel by failing to file a notice of appeal when he asked her to do so.  ECF No. 1, at 3.  The Government filed its response in opposition to Garcia-Izazaga's motion on June 24, 2019, and requested an evidentiary hearing with respect to Garcia-Izazaga's claim that Ms. Key did not file a requested notice of appeal.  ECF No. 8, at 10.  Accordingly, on June 26, 2019, the district judge referred this matter to the undersigned United States Magistrate Judge for the limited purpose of conducting an evidentiary hearing and filing findings of fact and conclusions of law regarding Garcia-Izazaga's claim.  ECF No. 10.

In accordance with the order of reference, the magistrate judge appointed counsel for the limited purpose of representing Garcia-Izazaga on his claim that Ms. Key failed to file a notice of appeal as instructed, and conducted a hearing on October 15, 2019.  ECF Nos. 11, 13, 18, 22, 23. Both parties were represented by counsel at the hearing.  Based upon the testimony at the hearing,

---

[1] All citations to ECF filings in the underlying criminal case, Criminal No. 5:17-CR-100-C-1, will be presented in the form "Crim. ECF No."

2

a review of Court records related to this matter, and applicable law, the undersigned submits the following findings of fact and conclusions of law.

## II. Summary of Testimony

Both Garcia-Izazaga and Ms. Key testified at the hearing. Garcia-Izazaga testified that he met with Ms. Key early in the case to discuss the Government's plea offer. Ms. Key estimated that his United States Sentencing Guidelines (Guidelines) range would be 204 to 288 months' imprisonment. Garcia-Izazaga affirmed that he signed the plea agreement and, during his rearraignment, acknowledged the appeal waiver that was part of his agreement. In March 2018, Garcia-Izazaga and Ms. Key met again to discuss his Presentence Report (PSR), in which the recommended Guidelines range was higher than anticipated.[2] Garcia-Izazaga stated that the higher Guidelines range concerned him but that he did not discuss those concerns with Ms. Key. Garcia-Izazaga also admitted that they again discussed the appeal waiver. Following his April 2018 sentencing, Garcia-Izazaga claimed that he saw Ms. Key in the courthouse hallway and asked her when she would visit him; Garcia-Izazaga asserted that Ms. Key told him she would visit in a couple of weeks. Garcia-Izazaga further stated that he mailed two letters to Ms. Key roughly a week after his sentencing, the first requesting that Ms. Key appeal the sentence and the second asking that she provide a copy of his case file, in addition to asking her to file an appeal.

On cross examination, Garcia-Izazaga confirmed that he did not express his concerns about the higher Guidelines range to Ms. Key. In addition, Garcia-Izazaga testified that he never called Ms. Key's office to determine if she received his immediate post-sentencing letters. Garcia-Izazaga further stated that he mailed a letter to the Court in November 2018 (Crim. ECF No. 258),

---

[2] The United States Probation Office released its initial PSR on February 27, 2018, in which the recommended Guidelines range was 151–188 months' imprisonment. Crim. ECF No. 171-1, at 23. On March 13, 2018, the Probation Office filed an addendum correcting a clerical error in the Guidelines range calculation, raising the recommended Guidelines range to 292–365 months' imprisonment. Crim. ECF No. 185-1.

3

some seven months after sentencing, and that the letter indicated he had mailed a letter to Ms. Key in August 2018 (four months post-sentencing). He denied, however, that the August 2018 letter is the one to which his earlier testimony referred, i.e., requesting a copy of his file. On redirect, Garcia-Izazaga testified that he sent the August 2018 letter to Ms. Key to inform her that he was in a new facility.[3]

Ms. Key testified that she discussed with Garcia-Izazaga the appeal waiver in his plea agreement before he signed it, and she indicated that he appeared to understand the agreement in its entirety, including the waiver. Ms. Key also stated that, after receiving the PSR, she went over the entire report with Garcia-Izazaga and specifically addressed the updated Guidelines range of 292 to 365 months' imprisonment. Ms. Key said she found the range surprising, and that both she and the Assistant United States Attorney expected a lower Guidelines range. Ms. Key testified that: (1) Garcia-Izazaga did not indicate any desire to pursue an appeal when he learned of the range; (2) she prepared Garcia-Izazaga for a sentence at the high end of the Guidelines range; and (3) the final sentence of 365 months' imprisonment was not a surprise. According to Ms. Key, she did not receive any letters or phone calls from Garcia-Izazaga after his sentencing.[4] In addition, Ms. Key denied seeing Garcia-Izazaga in the hallway after his sentencing. Further, Ms. Key does not speak Spanish, and she indicated that, even had a meeting taken place, she would not have understood a conversation in the hallway between herself and Garcia-Izazaga.

On cross examination, Ms. Key reiterated that Garcia-Izazaga did not express objections to, or concerns with, the higher Guidelines range during their PSR meeting. Further, Ms. Key stated that she discussed with Garcia-Izazaga his right to appeal during the PSR meeting, yet at no

---

[3] A later letter dated October 29, 2018—which Garcia-Izazaga filed with the Court in November 2018—indicates that the August letter to Ms. Key sought a copy of Garcia-Izazaga's case file. Crim. ECF No. 258.

[4] Ms. Key did acknowledge that Garcia-Izazaga's case file had been destroyed when her file server crashed and a physical backup copy had not been made.

4

point did he express a desire to pursue an appeal. Ms. Key recalled receiving one letter from Garcia-Izazaga, but that letter sought contact information for his consulate, which her office provided in a response; it did not state any desire to file an appeal.

On redirect, Ms. Key emphasized that she prepared Garcia-Izazaga to expect a high sentence within the Guidelines range because his immigration status and criminal history made a lengthy sentence more likely. Even after doing so, Garcia-Izazaga did not tell Ms. Key he wished to appeal any sentence that he received.

### III.   Findings of Fact

1. On October 20, 2017, Garcia-Izazaga was charged by way of a Complaint in case number 5:17-MJ-101-BQ, *United States v. Garcia-Izazaga*, with drug offenses occurring between March and July 2017. Crim. ECF No. 1.

2. Garcia-Izazaga made his initial appearance on October 27, 2017, in regard to the Complaint, and the Court appointed Ms. Key to represent him the same day. Crim. ECF Nos. 8, 9. Ms. Key entered her appearance on November 7, 2017. Crim. ECF No. 12.

3. Ms. Key has been licensed to practice law in Texas since November 2001. She primarily practices criminal law and handles a mixture of federal and state criminal cases.

4. Ms. Key is admitted to practice in the Northern District of Texas and has handled many federal cases, both as retained and appointed counsel. She is intimately familiar with the practice of federal criminal law.

5. On November 8, 2017, the Grand Jury returned a True Bill indicting Garcia-Izazaga on six counts, charging him with one count of Conspiracy to Distribute and Possess With Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 846; four counts of Possession With Intent to Distribute 500 Grams or More of Methamphetamine, in violation of 21

U.S.C. §§ 841(a)(1) and 841(b)(1)(A); and one count of Illegal Re-entry After Deportation, in violation of 8 U.S.C. § 1326 and 6 U.S.C. §§ 202(3), 202(4), and 557. Crim. ECF No. 20.

6. The Court arraigned Garcia-Izazaga on November 27, 2017, and subsequently issued a Pretrial Notice and Order setting trial for January 2, 2018. Crim. ECF Nos. 64, 65.

7. When discussing the applicable Guidelines in Garcia-Izazaga's case, Ms. Key informed Garcia-Izazaga he would likely receive a life sentence if he proceeded to trial and lost.

8. Ms. Key negotiated a plea agreement under which Garcia-Izazaga would plead guilty to a single count of possession with intent to distribute 500 grams or more of methamphetamine. Garcia-Izazaga's plea agreement contained an appellate-rights waiver that significantly limited which issues he could raise on direct appeal or in a motion under 28 U.S.C. § 2255. Crim. ECF No. 122. Ms. Key reviewed this provision with Garcia-Izazaga before he signed the agreement, and Garcia-Izazaga indicated he understood it. Ms. Key also estimated that Garcia-Izazaga's Guidelines range would be 204 to 288 months' imprisonment, but she explained that this was just an estimate, and the district court could sentence him to any amount of time up to the statutory-maximum for his offense. Garcia-Izazaga requested that Ms. Key try to negotiate for a maximum sentence of 180 months, but Ms. Key explained to him that the federal court system did not work that way.

9. The statutory maximum for Garcia-Izazaga's offense is life. *Id.*

10. Garcia-Izazaga signed the plea agreement and on December 28, 2017, pleaded guilty. Crim. ECF No. 136.

11. The United States Probation Office disclosed Garcia-Izazaga's PSR on February 27, 2018. It filed an addendum to the PSR on March 13, 2018, correcting a clerical error and adjusting the Guidelines range from 151–188 months to 292–365 months.

12. In March 2018, Ms. Key met with Garcia-Izazaga to review his PSR. During this meeting, she explained that the PSR calculated an advisory sentencing range higher than originally anticipated. She told Garcia-Izazaga he should expect a sentence at the upper end of the range because the district judge usually sentences at the high end. Ms. Key once again reviewed Garcia-Izazaga's limited appellate rights, but he did not indicate, either with an express instruction or by his behavior, that he wished to appeal.

13. At the April 13, 2018, sentencing, Garcia-Izazaga received a within-Guidelines range sentence of 365 months' imprisonment. The Court advised Garcia-Izazaga of the time limitation to file a notice of appeal. Garcia-Izazaga did not verbally instruct Ms. Key to file a notice of appeal. Nor did Garcia-Izazaga speak with Ms. Key in the courthouse hallway after sentencing and, even if he had, Ms. Key would not have been able to converse with him because she does not speak Spanish. Even accepting at face value Garcia-Izazaga's testimony that such a conversation occurred, he only asked Ms. Key when she would visit; he did not state he asked her to file an appeal. Ms. Key did not receive a letter instructing her to file a notice of appeal, and if she had, she would have filed one.[5] Ms. Key has a secretary who is fluent in Spanish capable of interpreting any letter received from Garcia-Izazaga. Additionally, Garcia-Izazaga never mentioned in his original § 2255 motion or accompanying memorandum that he allegedly sent a letter instructing Ms. Key

---

[5] Ms. Key's records in Garcia-Izazaga's criminal case were destroyed following a server crash and she lacked a physical backup copy of the file. Nonetheless, the Court credits Ms. Key's testimony that she has no recollection of receiving any letters from Garcia-Izazaga shortly after his sentencing, much less instructions directing her to file an appeal.

7

to appeal. ECF Nos. 1, 2. Many months after his sentencing, Garcia-Izazaga copied the Court on an October 2018 letter he sent to Ms. Key. That letter referenced an August 2018 letter requesting his case file so that he could prepare a habeas motion. The October letter received by the Court does not mention having instructed Ms. Key to file a notice of appeal, either directly or by letter. Crim. ECF No. 258. Further, even had Garcia-Izazaga's August letter instructed Ms. Key to file an appeal, Garcia-Izazaga sent the letter more than three months after the time to file a notice of appeal expired.

14. Ms. Key did receive a letter from Garcia-Izazaga asking her for consulate contact information, and she responded with the requested information.

15. Had Garcia-Izazaga instructed Ms. Key to file a notice of appeal, she would have done so. Because Garcia-Izazaga did not provide such instructions, and did not indicate by his actions or words that he wanted to appeal, Ms. Key did not file a notice of appeal. In addition, Ms. Key was unaware of any potential meritorious issue for appeal.

### IV. Conclusions of Law

The Sixth Amendment guarantees criminal defendants the right to "reasonably effective" legal assistance, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish a claim for ineffective assistance of counsel, a movant must satisfy the "now-familiar" *Strickland* test and demonstrate that: (1) his counsel's representation "fell below an objective standard of reasonableness"; and (2) he was prejudiced by his counsel's deficient performance. *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000) (quoting *Strickland*, 466 U.S. at 687–88). A movant's failure to satisfy either prong of the *Strickland* test is generally fatal to his claim. *Strickland*, 466 U.S. at 700; *see United States v. Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014).

### A. Garcia-Izazaga did not instruct Ms. Key to file a notice of appeal.

The *Strickland* test applies to a movant's claim "that counsel was constitutionally ineffective for failing to file a notice of appeal." *Flores-Ortega*, 528 U.S. at 477. An attorney's failure to file a requested notice of appeal "is *per se* ineffective assistance of counsel, with or without a showing that the appeal would have merit." *United States v. Tapp*, 491 F.3d 263, 265–66 (5th Cir. 2007) (citing *Flores-Ortega*, 528 U.S. at 483–86) (noting that the *Flores-Ortega* standard applies "even where a defendant has waived his right to direct appeal and collateral review"). Thus, if a movant establishes by a preponderance of the evidence that he asked his attorney to file a notice of appeal, and his attorney did not, prejudice is presumed. *Id.* at 266. An attorney's "duty to perfect an appeal on behalf of a convicted client," however, "does not arise on conviction . . . ." *Childs v. Collins*, 995 F.2d 67, 69 (5th Cir. 1993). Instead, the client must *clearly communicate* to his attorney, in a timely manner, that he wants to appeal. *See id.* (affirming denial of movant's ineffective assistance of counsel claim where movant failed to communicate to counsel his desire to appeal his criminal conviction); *see also United States v. Rivas*, 450 F. App'x 420, 424 (5th Cir. 2011) (citing *White v. Johnson*, 180 F.3d 648, 652 (5th Cir. 1999)) (explaining that the Fifth Circuit has "avoided a bright line rule requiring criminal defense counsel to perfect an appeal in every criminal conviction").

Here, Garcia-Izazaga failed to demonstrate by a preponderance of the evidence that he instructed Ms. Key to file an appeal on his behalf. In his motion, Garcia-Izazaga alleges that Ms. Key "rendered ineffective assistance by failing to file a notice of appeal and prosecute his direct appeal, when requested to do so." ECF No. 1. More specifically, Garcia-Izazaga claims in his supporting memorandum that he "direct[ed] his counsel to file a notice of appeal . . . because the government breached the plea agreement by failing to advise the district court that [he] was

9

induced to plead guilty to the charge . . . based, in part, on the promises that the government would recommend that he be sentence[d] between 17-years to 24-years of imprisonment . . . ." ECF No. 2, at 3. At the evidentiary hearing, Garcia-Izazaga claimed for the first time that: (1) he spoke to Ms. Key in the courthouse hallway following his sentencing and asked when she would visit him in jail, to which she responded that she would visit in two weeks; and (2) he sent two letters to Ms. Key's office asking her to file an appeal.

The undersigned does not find these claims credible. The undersigned initially notes that, in response to a question as to whether Garcia-Izazaga understood he was waiving attorney-client privilege by proceeding with his ineffectiveness claim, Garcia-Izazaga responded by stating, through an interpreter: "My name is Alejandro Garcia-Izazaga, and I'm eighteen years old. My—the language I speak is Spanish. I do not write, nor do I read, English." Garcia-Izazaga's claim concerning his age was patently false—per the PSR, Garcia-Izazaga was born September 15, 1988, making him 31 years old at the time of the hearing. Crim. ECF No. 171-1, at 2. While the Court had yet to place Garcia-Izazaga under oath, his willingness to unsolicitedly provide a gross misstatement of fact to the Court, basically before the hearing even began, logically raises serious doubts about his ability or willingness to testify truthfully on other matters.

The substantive record before the Court provides additional bases for finding Garcia-Izazaga's claims not credible. When Garcia-Izazaga provided the Court a copy of his October 2018 letter to Ms. Key concerning the case file, the letter contained no mention of an appeal. Crim. ECF No. 258. It neither asked whether Ms. Key filed an appeal nor how an appeal was progressing. The undersigned concludes that, had Garcia-Izazaga in fact previously contacted Ms. Key and requested that she pursue an appeal, he would also have inquired about its status in the letter. The undersigned also finds it instructive that Garcia-Izazaga never asserted in his motion or supporting

memorandum that he sent letters to Ms. Key asking her to file an appeal. The first mention of such letters (or of seeing Ms. Key in the hallway after his sentencing) was during the evidentiary hearing.[6] Further, Garcia-Izazaga's claim that he spoke with Ms. Key in the courthouse hallway following his sentencing lacks credibility because Ms. Key does not speak Spanish and could not have understood or responded to him. Even if they had conversed, Garcia-Izazaga's testimony merely indicates that he asked Ms. Key when she would visit, not that he instructed her to file a notice of appeal. Nor does Garcia-Izazaga explain the unusual circumstances of a just-sentenced defendant being taken through the courthouse hallway rather than the courtroom's back doors to the United States Marshal's office.[7] And finally, Garcia-Izazaga's assertion that he sent letters to Ms. Key asking her to file an appeal is rebutted by Ms. Key's credible testimony that she does not recall receiving any such letters and would have filed a notice of appeal if she had received instructions to pursue an appeal.

The undersigned therefore gives no weight to Garcia-Izazaga's claims that he asked Ms. Key file an appeal on his behalf. As such, there is no credible evidence that Garcia-Izazaga ever instructed Ms. Key to file an appeal in his criminal case. Because Garcia-Izazaga has failed to demonstrate by a preponderance of the evidence that he clearly asked Ms. Key to appeal his criminal sentence, Garcia-Izazaga's claim should be denied.

---

[6] While Garcia-Izazaga mentions the letters and hallway interaction in his proposed findings of fact and conclusions of law (ECF No. 20), he provided no credible evidence during the evidentiary hearing supporting these events.

[7] Although Garcia-Izazaga's proposed findings of fact and conclusions of law attempt to provide an explanation, Garcia-Izazaga nevertheless offered no evidence concerning or supporting this explanation. ECF No. 20.

### B. Garcia-Izazaga has not demonstrated Ms. Key breached her constitutional duty to consult with him regarding an appeal, or that he was prejudiced by any such breach.

Where a movant does not specifically direct his attorney to file an appeal, as in this case, the Court may still have an obligation to determine whether his attorney failed to adequately consult with him regarding an appeal. *Flores-Ortega*, 528 U.S. at 478. The Court notes initially that it does not read Garcia-Izazaga's motion as raising a claim that Ms. Key failed in her obligation to adequately consult with Garcia-Izazaga about the possibility of an appeal. To the extent the Court must consider the issue, however, Garcia-Izazaga has nonetheless failed to establish a meritorious claim. *See, e.g., id.* ("In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal."); *Hurrelbrink v. United States*, Case No. 3:15-CV-3978-L-BK, 2017 WL 1683663, at *2 n.2 (N.D. Tex. Mar. 27, 2017) (explaining that although movant "did not assert that counsel failed in his obligation to adequately consult with [him] about appealing," the court would address such claim "because *Flores-Ortega* requires" as much); *Lopez-Lara v. United States*, Civil Action No. B-13-178, 2014 WL 11531891, at *11 (S.D. Tex. Aug. 7, 2014) (explaining that the court was required to determine whether movant's attorney had a duty to consult regarding an appeal, despite movant's failure to ask his attorney to file an appeal).

### 1. *Garcia-Izazaga has not demonstrated Ms. Key breached her duty to consult with him regarding an appeal.*

An attorney may have a constitutional duty to consult with a client regarding an appeal. *Flores-Ortega*, 528 U.S. at 480. "Under *Flores–Ortega,* the first *Strickland* prong begins with the question whether counsel 'consulted' with the defendant regarding an appeal." *United States v. Pham*, 722 F.3d 320, 323 (5th Cir. 2013) (quoting *Flores-Ortega*, 528 U.S. at 478). "Consulting" is generally defined as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 478). Where an attorney fails to consult with a client regarding an appeal, "then the question is whether that failure was unreasonable because it breached the duty to consult." *Pham*, 722 F.3d at 324; *see also Flores-Ortega*, 528 U.S. at 478 (explaining that even where an attorney "has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance"). An attorney "has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Pham*, 722 F.3d at 324 (quoting *Flores-Ortega*, 528 U.S. at 480). The Court must assess an attorney's duty to consult "in light of 'all the information counsel knew or should have known.'" *Id.* (quoting *Flores-Ortega*, 528 U.S. at 480). "Whether the conviction followed a trial or a guilty plea is 'highly relevant,' although not determinative, as is whether the defendant waived his right to appeal and whether he received a sentence for which he bargained." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 480).

The evidence shows that Ms. Key informed Garcia-Izazaga, on multiple occasions, of his right to pursue an appeal if he wished to do so, even in light of the appeal waiver in his plea agreement. The undersigned finds that such discussions generally satisfied Ms. Key's obligation to consult with Garcia-Izazaga regarding an appeal. The question then becomes whether Ms. Key had any duty to further inquire following these discussions with Garcia-Izazaga, i.e., after discussing his options in reviewing the PSR. Garcia-Izazaga introduced no evidence suggesting that either his pre-sentencing or post-sentencing actions should have triggered Ms. Key's duty to further investigate his desire to appeal. The record reflects multiple discussions Ms. Key had with Garcia-Izazaga concerning his appellate rights, yet he gave no indication to her that he wanted to appeal, either during or after these consultations. Specifically, Garcia-Izazaga has not shown that he was visibly dissatisfied, or that he voiced complaint to Ms. Key, regarding the PSR or the length of sentence actually imposed. *See, e.g., United States v. Casarez*, 304 F. App'x 325, 2008 WL 5381482, at *1 (5th Cir. Dec. 23, 2008) (explaining that movant failed to reasonably demonstrate to counsel he was interested in appealing where, although movant "was upset about sentencing matters before and after the sentencing hearing, [movant] did not express to counsel any interest in appealing the sentence either when [movant] spoke to counsel after the sentencing hearing or when [movant] called counsel's office"); *Hurrelbrink*, 2017 WL 1683663, at *4–5 (holding that movant failed to establish the first *Strickland* prong where movant, despite being dissatisfied with her sentence, did not indicate a desire to take any action to appeal); *United States v. Washington*, Criminal Action No. 11-235, 2014 WL 5179601, at *7 (E.D. La. Oct. 14, 2014) (holding that attorney's failure to consult with movant regarding an appeal did not breach a constitutional duty where movant presented no credible evidence establishing that he conveyed to his attorney an interest in appealing). The Court particularly notes that both Garcia-Izazaga and Ms. Key testified

that he did not express any concerns to Ms. Key regarding the increased Guidelines range following the PSR revision.

Moreover, Garcia-Izazaga has not demonstrated that a rational defendant would have wanted to appeal. The PSR contained a sentencing recommendation of 292 to 365 months' imprisonment in a case with a statutory maximum life sentence. Garcia-Izazaga was aware of the information contained in the PSR, and Ms. Key prepared him for a sentence at the high end of the Guidelines range prior to sentencing. Ms. Key further explained that she had no reason to believe Garcia-Izazaga would want to appeal his sentence because he had signed a waiver of appeal and the 365-month sentence was less than the anticipated sentence had Garcia-Izaaga not pleaded guilty.[8] In addition, the district judge advised Garcia-Izazaga at sentencing of his right to appeal and the time within which to file an appeal. Yet, despite the district judge's admonition, Garcia-Izazaga presented no credible evidence demonstrating he conveyed any interest in "chang[ing] the outcome of his sentencing through additional proceedings" sufficient to trigger Ms. Key's constitutional duty to consult with Garcia-Izazaga about an appeal. *Pham*, 722 F.3d at 326; *see Hurrelbrink*, 2017 WL 1683663, at *4.

In sum, Garcia-Izazaga has failed to show that he conveyed any interest in appealing to Ms. Key, and thus triggering for Ms. Key a duty to consult with Garcia-Izazaga. *Cf. Pham*, 722 F.3d at 325–26 (concluding that attorney's awareness that movant hoped to receive probation, and movant's "post-sentencing statements and demeanor," prompted attorney's constitutional duty to consult with movant about an appeal). Instead, the record demonstrates that Garcia-Izazaga exhibited no desire to appeal until he filed this § 2255 motion. Moreover, Garcia-Izazaga did not

---

[8] Ms. Key testified that she warned Garcia-Izazaga that, if he lost at trial, he was likely facing a sentence between thirty years and life. Garcia-Izazaga agreed that he had been so warned.

15

establish, by a preponderance of the evidence, that a rational defendant would have appealed. Accordingly, the Court finds that Garcia-Izazaga has failed to meet his burden with respect to the first prong of *Strickland*.

### 2. *Garcia-Izazaga has not shown he would have appealed but for Ms. Key's alleged failure to consult with him regarding an appeal.*

Even assuming Garcia-Izazaga could establish the first *Strickland* prong, he has failed to demonstrate he was prejudiced by any constitutionally deficient performance. When an attorney breaches her constitutionally-imposed duty to consult, the Court will not presume prejudice. *Hurrelbrink*, 2017 WL 1683663, at *2 (citing *Flores-Ortega*, 528 U.S. at 484); *Esquivel v. United States*, No. 3:15-cv-553-D-BN, 2016 WL 6902150, at *4 (N.D. Tex. Oct. 3, 2016). Instead, "under *Flores-Ortega*, a defendant satisfies the second *Strickland* prong if he shows 'that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.'" *Pham*, 722 F.3d at 324 (quoting *Flores-Ortega*, 528 U.S. at 484). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 694). "[E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Flores-Ortega*, 528 U.S. at 485. To establish prejudice, however, a defendant need not "demonstrate that his hypothetical appeal might have had merit . . . ." *Id.* at 486.

Garcia-Izazaga points to no evidence showing that he would have timely appealed but for Ms. Key's alleged failure to consult regarding an appeal. As the Fifth Circuit explained in *Bejarano*, "while 'a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal,' this 'evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to

16

file an appeal.'" 751 F.3d at 286 (quoting *Flores-Ortega*, 528 U.S. at 486). Garcia-Izazaga failed to present any credible evidence he timely conveyed an interest in appealing, much less evidence that he in fact would have appealed. Garcia-Izazaga has not credibly established that he sent letters to Ms. Key requesting that she pursue an appeal, nor that he conversed with her in the courthouse hallway after his sentencing. Further, Garcia-Izazaga did not call Ms. Key's office to inquire about the letters or direct her to file an appeal. The first indication that Garcia-Izazaga wished to appeal his sentence was in filing this § 2255 motion, which occurred nearly one year after sentencing. *See id.* at 287 (quoting *Johnson v. United States*, 364 F. App'x 972, 977 (6th Cir. 2010)) (explaining that waiting almost one full year after sentencing to file a § 2255 motion indicates that movant was unlikely to have timely appealed). Additionally, Garcia-Izazaga provided only one ground upon which he would have appealed his sentence: "[T]he government breached the plea agreement by failing to advise the district court that [he] was induced to plead guilty to the charge . . . based, in part, on the promises that the government would recommend that he be sentence[d] between 17-years to 24-years of imprisonment . . . ." ECF No. 2, at 3. Examination of Garcia-Izazaga's plea agreement shows he understood that the Government's only promise to him was that it would not bring any other charges against him based on the underlying conduct and it would dismiss, after sentencing, any remaining pending charges.[9] Crim. ECF No. 122, at 4–5. Garcia-Izazaga provided no evidence in support of his claim that the Government would recommend a particular sentence; in fact, he never raised this issue again after its brief mention in his memorandum supporting the § 2255 motion. It appears to the undersigned that Garcia-Izazaga's theoretical grounds for appeal were frivolous, which weighs against a finding that a rational person in his position would have sought to appeal his sentence. *Flores-Ortega*, 528 U.S. at 485 (noting

---

[9] The plea agreement contained a merger provision affirming that the Government made no further promises to him outside of those made in the written plea agreement. Crim. ECF No. 122, at 6–7.

that "evidence that there were nonfrivolous grounds for appeal . . . will often be highly relevant in" determining whether a movant was prejudiced by counsel's failure to consult with him regarding an appeal). In other words, the evidence shows Garcia-Izazaga was unlikely to have timely appealed his criminal sentence. *Id.*

Accordingly, Garcia-Izazaga has failed to establish there is a reasonable probability he would have appealed but for Ms. Key's alleged deficiency. Thus, the Court concludes Garcia-Izazaga has also failed to meet his burden with respect to the second *Strickland* prong.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court deny Garcia-Izazaga's claim that Ms. Key provided ineffective assistance of counsel by failing to file a notice of appeal on his behalf.

## VI. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: December 23, 2019

_____
**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**